E-FILED
12/27/2022 2:01 PM
Friday, 03 February, 2023 TAMMY WEIKERT, CIRCUIT CLERK
ROCK ISLAND COUNTY, IL
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT OF THE FOURTEENTH JUDICIAL CIRCUIT
ROCK ISLAND COUNTY, ILLINOIS

| | |
|---|---|
| DANIEL J. WHITE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | )  No. **2022LA121** |
| | ) |
| DEERE & COMPANY, a Delaware | ) |
| Corporation, | ) |
| | ) |
|     Defendant. | ) |

## COMPLAINT

Plaintiff, Daniel J. White, by and through his attorneys, Katz Nowinski P.C., for his Complaint against defendant Deere & Company, states:

## COUNT I - COMMON LAW RETALIATORY DISCHARGE

1.    Plaintiff, Daniel J. White ("Plaintiff" or "White"), is a resident of Bettendorf, Iowa.

2.    Defendant Deere & Company (hereinafter referred to as "Deere" or "defendant") is a Delaware corporation registered to do business in the state of Illinois with its primary location in Moline, Rock Island County, Illinois.

3.    Plaintiff, at all times relevant to this Complaint, was employed by Deere at its Moline headquarters as "Chief of Electrification, Small Ag & Turf," and/or "General Manager, Small Ag & Turf Electrification."

4.    Essentially, Plaintiff was hired to develop a new autonomous, battery-powered tractor/farm implement products.

5.    Plaintiff has 24 years experience in battery and battery system development, production management, battery testing, and failure analysis.

6.     Plaintiff accepted a position at Deere in writing on or about January 12, 2022 and started employment on or about February 16, 2022.

7.     The week of June 20, 2022, Plaintiff took a trip to Kreisel Electric Inc., an Austrian company which manufactures electric battery modules and in which Deere had acquired a majority ownership interest in approximately February 2022, to visit the facility which was constructing/supplying the batteries for electric vehicles.

8.     During this visit, Plaintiff identified what he perceived to be safety issues or concerns with the batteries.

9.     Specifically, Plaintiff identified safety issues regarding Kreisel's immersion cooling – the largest concern being that the cells did not have an electrical insulation layer between them and the coolant -- which could lead to safety issues including but not limited to electrical shock, delayed or immediate catastrophic thermal runaway event, and hydrogen explosion as a result of water contamination within the battery coolant or a foreseeable mistake by an operator, owner, technician, mechanic, engineer or other individual working on the vehicle where they fill the battery with a more common coolant (such as antifreeze or other conductive or capable of becoming conductive coolant) instead of the currently proprietary battery coolant.

10.     Shortly after this visit, Plaintiff had a group meeting which included Jenny Preston, Director John Deere Electric Powertrain (and CEO of Kreisel Electric), at which Plaintiff stated that he had safety concerns with Kreisel's immersion cooling.

11.     Plaintiff was not only highlighting safety issues to the public, but also to Deere employees and suppliers that were in the process of developing prototypes.

12.     These Deere employees and suppliers were handling the Kreisel battery technology and did not know the vulnerabilities.

13.     Deere leadership knew (in part because Plaintiff informed them) that there had been a failure in a vehicle battery and it was absolutely plausible that this could happen to tractors and equipment being developed with the Kreisel technology.

14.     Despite White's warnings and Deere uppermost leadership's knowledge, Deere continued to put the public and its own staff at risk and purposely keep them uninformed of the safety hazards associated with the Kreisel battery technology.

15.     Pierre Guyot, Senior Vice President John Deere Power System (and Chairman of Kreisel Electric), sent a directive to Plaintiff (and others) stating that they must use Kreisel for this project.

16.     In approximately early August 2022, Plaintiff met with his direct superior, Aaron Wetzel, (Vice President of Small Ag & Turf Production Systems), to discuss his concerns.

17.     In approximately mid-August 2022, Plaintiff met with John Vaaler, Director of Finance for Power Systems, to review his safety concerns and advise that Deere should hire a battery consultant to collect an independent analysis focused on safety of the Kreisel Battery technology and including the issues previously brought to their attention.

18.     In approximately late-August 2022, Pierre Guyot sent a second directive to Plaintiff (and others) insisting that they must use Kreisel and Kreisel's designs for this project.

19.     Shortly thereafter (still in approximately late-August 2022), Plaintiff met with Pierre Guyot to walk him through the concerns regarding safety issues regarding Kreisel's immersion cooling.

20.     In approximately mid-September 2022, Plaintiff forwarded a test plan proposal for the Kreisel battery to Jenny Preston.

21.     Shortly thereafter (still in approximately mid to late-September 2022) Jenny Preston informed Plaintiff that he was not to conduct any testing on the Kreisel batteries.

22.     Jenny Preston refused to allow the team to conduct testing to educate themselves on potential risks and hazards while near the Kreisel technology.

23.     Tests that were refused included immersion, vibration, shock, and salt spray, all of which were and are common safety tests as outlined in UL 2054 and UL 2580 used to identify weaknesses within the design and to address common hazards of the technology for the safety of workers, users and the public.

24.     These tests were to have parameters chosen in order to simulate the actual use or condition in the field so as to identify risks to Deere employees and the public.

25.     By refusing to allow the team to complete the tests, Deere, by Jenny Preston, allowed the staff, suppliers, field testers, customers and public to proceed in ignorance and remain at risk.

26.     Specifically, Deere failed to follow common design practice and identify and correct conditions of foreseeable misuse(e,g, filling battery with wrong coolant), as defined in IEC 62368 (as well as other standards), which could be chosen to qualify the battery driven audio and visual systems in the equipment as well as IEC62619 which could be chosen to qualify the battery system.

27.     Specifically, IEC62619 requires:

**General safety considerations**

**5.1 General**

The safety of lithium secondary cells and battery systems requires the consideration of two sets of applied conditions:

1) Intended use;
2) Reasonably foreseeable misuse.

Cells and battery systems shall be designed and constructed so that they are safe under conditions of intended use and reasonably foreseeable misuse. It may also be expected that cells and battery systems subjected to intended use shall not only be safe but shall continue to be functional in all respects.

It is expected that cells or battery systems subjected to misuse may fail to function. However, even if such a situation occurs, they shall not present any significant hazards.

Potential hazards which are the subject of this document are:

a) Fire,
b) Burst/explosion,
c) Leakage of cell electrolyte,
d) Venting with continuous emission of flammable and/or toxic gas and/or smoke,
e) Rupture of the casing of cell, module, battery pack, or battery system with exposure of internal components.

28.    Furthermore, IEC (e.g. IEC62368) commonly requires two levels of protection between the person and energy source in a condition of failure in order to ensure the risk of injury or death are minimized.

29.    On October 5, 2022, Plaintiff met with Wes Robinson, Director of Finance and/or Director Corporate Business Development at John Deere, who had participated in executing the majority share acquisition of Kreisel, and once again explained, in part, the safety issues with Kreisel battery, that they were being forced to use them, that they were not allowed to test, and that he was extremely concerned about those safety issues.

30.    On October 19, 2022, a competitor of Deere's other divisions (over which White has no authority), experienced a catastrophic battery fire in a battery-powered zero-turn radius (ZTR) mower at the world's largest equipment show.

31.     In response to that competitor's battery fire on October 19, 2022, Plaintiff once again spoke to and emailed senior leaders at Deere that the competitor's fire/explosion was likely from water contamination and that the Kreisel battery needs to be evaluated or a more mature alternate technology needs to be chosen for Deere.

32.     Plaintiff once again expressed his concerns to his direct superior, Aaron Wetzel, specifically that he did not feel comfortable fielding prototypes with the Kreisel technology/batteries as the team of workers was not trained and aware as to the severity and probability of an event and how or when it may occur.

33.     Plaintiff highlighted these concerns after the competitor's fire as it outlined how the product may be used outside its originally intended use.

34.     The October fire at the largest industry tradeshow highlighted the need for continual testing throughout the design process in order to ensure the safety of the staff, suppliers and public, and also highlighted how foreseeable misuse conditions such as using high pressure water on prototypes is absolutely plausible and could result in a safety situation far more severe when using the Kreisel batteries in the autonomous electric tractor as the battery system had vulnerability to water and the size of the battery was intended to be over an order magnitude larger than the competitor's battery that just experienced the fire.

35.     The use of water or antifreeze (which contains water) as coolant is a "foreseeable misuse" condition and needed to be identified and managed in order to ensure the safety of Deere employees and the public.  Furthermore, the system was not designed for a single point failure (such as a puncture or leak in the battery pack enclosure allowing water to enter), which is a common design requirement.

36. Next, Plaintiff reached out to Steve Edwards, Global Engineering Manager, who was the lead for the Test and Safety Department for this size tractor being used to define the platform, and informed Edwards that Plaintiff's team was being restricted from doing testing on the Kreisel battery and asked for assistance to help get the battery system tested and ensure safety, including the safety of his workers.

37. Edwards reviewed the video of the ZTR fire at the industry tradeshow on YouTube and agreed to help engage the battery team to get some level of understanding of the Kreisel Batttery technology and information to the individuals engaging with the technology.

38. On or about October 24, 2022, Plaintiff wrote a note to Mark Von Pentz, President of Agriculture & Turf, requesting a meeting to discuss his concerns with the Kreisel batteries and being forced to use them.

39. On October 25, 2022, Plaintiff met with Mark Von Pentz to discuss Plaintiff's Kreisel battery safety concerns and being forced to use the Kreisel battery technology in their program.

40. Also on October 25, 2022, Plaintiff met with Josh Jepsen, Deere's Senior Vice President & Chief Financial Officer, and yet again explained his concerns with the Kreisel battery and how reliability concerns associated with the immersion cooling technology only make the safety concerns worse because many of the reliability concerns force the user to put more coolant in the battery.

41. Out of additional safety concerns for the public and for Deere's workers, on October 26, 2022, White sent a proposed Kreisel battery test plan to Steve Edwards in an attempt to get some testing done on the Kreisel batteries before they were handled by Deere workers or put into the fields with end users.\

42. On October 31, 2022, or November 1, 2022, Deere terminated Daniel White.

7

43.     Deere terminated White because of White's reports and complaints of serious safety concerns with the electric batteries that were to be used in the power equipment White's team was ultimately to produce.

44.     Additionally, or alternatively, Defendant's termination was in violation of a clear mandate of Illinois law and official public policy of the State of Illinois, particularly rules and regulations regarding the safety and health of Illinois residents and employees of Deere, particularly including but not limited to :

    A. OSHA General Duty Clause, 29 U.S.C. § 654(a)(1):

        (a) Each employer—

        (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

        ;

    B. OSHA regulations as stated in OSHA Standard Interpretation letter dated June 23, 2021 titled "Coverage of lithium-ion batteries under the Hazard Communication standard: "Although OSHA has not conducted a hazard classification on Li-ion batteries, the agency has reviewed publicly-available information from U.S. government agencies and industry consensus standards such as the U.S. Consumer Product Safety Commission (CPSC), USDOT/Pipeline and Hazardous Material Safety Administration (USDOT/PHMSA), and the National Fire Protection Association (NFPA). The information shows that while lithium cell or battery technology is complex, potential cell or battery failure during use and handling can present a fire (physical) hazard, which has caused or could cause workers to be exposed to burns. Additionally, the information shows that toxic air contaminants (e.g., lithium, cobalt) can be released due to chemical leakage or venting when the battery is damaged or catches fire, potentially exposing workers to a health hazard."

45.     The recognized hazards identified by Plaintiff, including but not limited to electrical shock, delayed or immediate catastrophic thermal runaway event (fire and explosion) are or constitute "recognized hazards that are causing or are likely to cause death or serious physical harm to [Deere's] employees."

8

46.     The recognized hazards are also identified and part of common industry safety standards including but not limited to industry safety standard IEC 62368, IEC 62619, UL 2054, and UL 2580.

47.     Defendant's termination of Plaintiff therefore constituted common law wrongful discharge and/or retaliatory discharge under "common law" principles.

48.     As a direct and proximate result of defendant's termination of Plaintiff, White has sustained damages including loss of salary and fringe benefits, retirement benefits and employer contribution to health insurance, and Plaintiff also suffered physical and mental pain and suffering,  loss of enjoyment of life, embarrassment, humiliation, anxiety and other damages all in an amount in excess of $75,000.

49.     Defendant willfully and wantonly or with gross negligence discharged the Plaintiff on the basis of and in retaliation for his reporting of safety issues and violations and for documenting such safety issues in connection with the Kreisel batteries and technology, such that punitive or exemplary damages should be assessed against Defendant.

        WHEREFORE, for the reasons stated herein, Plaintiff, Daniel White, requests this court enter judgment in his favor and against Defendant Deere & Company, in an amount to fairly compensate him for his lost salary and lost value of fringe benefits in the past and in the future, compensatory damages including emotional and mental distress, loss of enjoyment of life, embarrassment, humiliation, angst, equitable relief of reinstatement to her former position or in the alternative future lost wages and benefits, as well as punitive or exemplary damages, and for his costs, all in an amount in excess of  in excess of $75,000.

## COUNT II – DECLARATORY JUDGMENT

1.      Plaintiff, Daniel White, is a resident of Bettendorf, Iowa.

2.      Defendant Deere & Company (hereinafter referred to as "Deere" or "defendant") is a Delaware corporation registered to do business in the state of Illinois with its primary location in Moline, Rock Island County, Illinois.

3.      Pursuant to 735 ILCS 5/2-701, Plaintiff hereby requests declaratory judgment as to the rights and responsibilities of the above parties as follows.

4.      On or about January 12, 2022, Plaintiff and Deere entered into a "Retention Agreement."

5.      A true and correct copy of this Retention Agreement is attached as Exhibit 1.

6.      The Retention Agreement provided in part that "[t]o ensure the continuity of business operations, the Company desires that Employee remain employed for a Retention Period," which was defined as January 31, 2022 to January 15, 2024, the "Company shall provide a Retention Payment to Employee under the terms and conditions set forth in this Agreement.".

7.      The "Retention Payment" set forth in the Agreement provided "the Company shall pay Employee lump sum payment in the net amount of $1,500,000, which will be grossed up for applicable tax withholding within 30 days of hire."

8.      Deere made the Retention Payment to Plaintiff.

9.      On October 31, 2022, or November 1, 2022, Deere terminated Daniel White.

10.     Deere has asserted that Plaintiff must repay the Retention Payment, alleging that he was terminated for "Cause" as that term is defined in the Retention Agreement.

11.     Specifically, the Retention Agreement defines "Cause" in paragraph 5(c) as follows:

> c. **Cause**. For purposes of this Agreement, the Company will have "Cause" to terminate Employee's employment in the following circumstances: Employee fails or refuses to carry out the reasonable and lawful instructions of management of the Company concerning duties or actions consistent with Employee's position; Employee is convicted of, or pleads guilty or nolo contendere to, any felony or any crime involving fraud; Employee commits any fraud, embezzlement, misappropriation, breach of fiduciary duty or other material act of dishonesty against the Company; Employee engages in any willful misconduct resulting in a

loss to the Company or damage to its reputation; Employee commits any violation of any of the Company's policies, including but not limited to the policy against unlawful harassment; or the performance of Employee's duties becomes unsatisfactory in any respect, in the sole discretion of the Company.

12.    On information from Plaintiff's personnel file produced by Deere, Deere appears to be invoking the latter portion of this definition: "the performance of Employee's duties becomes unsatisfactory in any respect, in the sole discretion of the Company."

13.    Plaintiff's personnel file contains a "2022 Performance Form for Daniel J White" that was electronically signed on behalf of Aaron Wetzel, Plaintiff's superior, on November 9, 2022.

14.    This performance review contains no negative comments on Plaintiff's performance.

15.    The portion of the definition of Cause in paragraph 5(c) of the Retention Agreement ("the performance of Employee's duties becomes unsatisfactory in any respect, in the sole discretion of the Company;") is so over broad and one-sided in favor of Deere as to be illusory.

16.    Plaintiff therefore takes the position that the Retention Agreement is not enforceable because this provision is patently unreasonable and illusory, enforcement would subvert the purpose of the contract, and enforcement would be antithetical to the concept of fair dealing.

17.    There exists an actual controversy among the parties in determining whether that portion of paragraph 5(c) of the Retention Agreement ("the performance of Employee's duties becomes unsatisfactory in any respect, in the sole discretion of the Company;") is enforceable.

18.    Plaintiff seeks a declaration that the portion of paragraph 5(c) of the Retention Agreement ("the performance of Employee's duties becomes unsatisfactory in any respect, in the sole discretion of the Company;") is not enforceable.

19.    Pursuant to 735 ILCS 5/2-701, Plaintiff respectfully requests that this Court declare the rights of the parties as to the Retention Agreement.

WHERFORE, Plaintiff, Daniel White, requests an Order of Declaratory Judgment against Respondent, declaring that the portion of paragraph 5(c) of the Retention Agreement ("the performance of Employee's duties becomes unsatisfactory in any respect, in the sole discretion of the Company;") is so over broad and one-sided in favor of Deere as to be illusory, unreasonable, and not enforceable; and for such further relief as this Court deems just and proper.

DANIEL J. WHITE, Plaintiff,


By:   /s/ John F. Doak
        John F. Doak (ARDC # 6204122)

For:
KATZ NOWINSKI P.C.
Attorneys for Plaintiff
1000 - 36th Avenue
Moline, IL 61265-7126
Telephone:  309-797-3000
Fax:  309-797-2167
Email: jdoak@katzlawfirm.com



# RETENTION AGREEMENT

This Retention Agreement ("Agreement") is between Daniel White ("Employee"), an individual, and Deere & Company (the "Company"). In consideration of the mutual promises made herein, Employee and Company agree as follows:

1. **Purpose of Retention Agreement.** To ensure the continuity of business operations, the Company desires that Employee remain employed for a Retention Period (as defined below in Paragraph 2). The Company shall provide a Retention Payment to Employee under the terms and conditions set forth in this Agreement. The Retention Payment paid to Employee shall be in addition to other compensation and benefits which the Employee may otherwise be eligible to receive.

2. **Retention Period.** The "Retention Period" shall begin on January 31, 2022, and shall end on January 15, 2024. Employee remains an employee-at-will during the entire time of employment with the Company, which means that the Company or Employee may terminate Employee's employment at any time with or without Cause (as defined below) and without advance notice.

3. **Retention Payment.** the Company shall pay Employee lump sum payment in the net amount of $1,500,000, which will be grossed up for applicable tax withholding within 30 days of hire. (the "Retention Payment").

4. **Duties.** Employee agrees to use reasonable best efforts to perform Employee's regular duties and/or such other duties throughout the Retention Period as may be required by the Company. If Employee fails to use reasonable best efforts, Employee shall be deemed to have materially breached this Agreement, and the Company will not be obligated to pay the Retention Payment.

5. **Conditions Required for Retention Payment.** In addition to remaining employed by the Company as a full-time employee in good standing using reasonable best efforts to perform Employee's job duties as described in Paragraph 4 of this Agreement during the Retention Period, Employee also must comply with the following conditions:

   a. **Resignation.** Employee shall not resign from employment prior to the end of the Retention Period, nor shall she commit any action or omission that results in termination for Cause.

   If Employee resigns prior to the end of the Retention Period, the Employee must repay to the Company any portion of the Retention Payment received prior to the end of the Retention Period.

   b. **Termination.** Employee must continue to perform Employee's duties in a satisfactory manner, and in compliance with all Company policies and procedures, until the end of the Retention Period. If Employee does not perform Employee's duties satisfactorily and remain employed in good standing throughout the Retention Period or, if on or before the end of the Retention Period, Employee (i) is terminated either for unsatisfactory performance or Cause, including violation of Company policies or procedures, or (ii) voluntarily resigns or retires, the Employee must repay to the Company any portion of the Retention Payment received prior to the end of the Retention Period.

   c. **Cause.** For purposes of this Agreement, the Company will have "Cause" to terminate Employee's employment in the following circumstances: Employee fails or refuses to carry out the reasonable and lawful instructions of management of the Company concerning duties or actions consistent with Employee's position; Employee is convicted of, or pleads guilty or nolo contendere to, any felony or any crime involving fraud; Employee commits any fraud, embezzlement, misappropriation of funds, misrepresentation, breach of

*D.W*

Confidential with no Personal Information

fiduciary duty or other material act of dishonesty against the Company; Employee engages in any willful misconduct resulting in a loss to the Company or damage to its reputation; Employee commits any violation of any of the Company's policies, including but not limited to the policy against unlawful harassment; or the performance of Employee's duties becomes unsatisfactory in any respect, in the sole discretion of the Company.

d. **Compliance with Applicable Laws.** Employee shall at all times comply with laws and regulations (whether domestic or foreign) applicable to Employee's actions on behalf of the Company.

e. **Confidentiality of Business Information.** Employee shall not, at any time during or after employment by the Company, make any unauthorized or unlawful disclosure of any confidential business information or trade secrets of the Company, or make any use thereof, except in the carrying out of the Employee's employment responsibilities with the Company.

6. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties with regard to the Retention Period and Retention Payment and supersedes any and all previous communications, representations, understandings and agreements regarding the Retention Period and Retention Payment. Any modification of this Agreement will be effective only if it is in writing and signed by both parties. This Agreement is intended to comply with, or be exempt from, Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A") and shall be construed and administered in accordance with Section 409A.

AGREED AND ACCEPTED:
Daniel White

Signature: _Daniel White_

Date: _1/12/22_

DEERE & COMPANY

By: _Lauren Foong_

Title: _8/15/2022 HR Business partner_

Date: _8/5/2022_

Confidential with no Personal Information